LEE et al. v. CLAY, ROBINSON & CO. OF TEXAS et al.   (No. 117–2981.)

(Commission of Appeals of Texas, Section B. March 31, 1920.)

CHATTEL MORTGAGES ☞243 — RELEASE OF MORTGAGE HELD SUPPORTED BY SUFFICIENT CONSIDERATION.

Where the owner of cattle covered by a chattel mortgage sold part of the cattle, accepting a part payment of $150, and the purchaser before delivery resold them to a third party, and it appeared that neither the original purchaser nor his vendee knew of the existence of the mortgage at the time of the sale, but that upon obtaining knowledge thereof they agreed with the mortgagee's agent that the proceeds upon sale in a certain market should be paid to the mortgagee, who was thereupon to release the mortgage, the payment of the $150 constituted a consideration for the agreement to release, since, if the original purchaser had refused to carry out the contract in event that the mortgagee should have insisted on its rights, it could have required the return of the payment; and the agreement to release deprived them of such right, and also because by the agreement the mortgagee, which was the real vendor, relinquished all its rights to such payment.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Clay, Robinson & Co. and others against W. H. Lee and others. A judgment for plaintiffs was affirmed by the Court of Civil Appeals (185 S. W. 1061), and defendants bring error. Reversed and remanded in accordance with recommendation of the Commission of Appeals.

James C. Wilson and Baskin, Dodge, Baskin & Eustis, all of Ft. Worth, for plaintiffs in error.

Capps, Cantey, Hanger & Short, of Ft. Worth, for defendants in error.

SADLER, P. J. The primary and rehearing opinions of the Court of Civil Appeals will be found in 185 S. W. 1061. The statements there given are deemed sufficient to an understanding of the question presented in the application for writ of error.

It may not be amiss to say that we have

─────────────────────────────

treated the record as sufficient to justify the determination of the case, and will forego any further statement than as same may be shown in the discussion of the question involved.

## Opinion.

The real matter for determination arises upon the construction of the jury findings. What judgment should follow from the findings of the jury is the material inquiry.

The case was submitted upon special issues, which, with the answers, are as follows:

"(a) If there was any consideration to release the cattle described in the pleadings, and, if so, what was such consideration? Answer: Yes; $150 earnest money given by Lee to Barrow.

"(b) Did Ireland Hampton, manager of plaintiff company, instruct or authorize De Forrest to accept the amount of money agreed to be paid by Lee Bros. to W. S. Barrow and release the cattle? Answer: No; not in this case.

"(c) Did De Forrest or any one for plaintiff agree to accept the amount of the purchase price agreed to be paid by Lee Bros. to W. S. Barrow and release the cattle to defendants Loving and Barron? Answer: Yes.

"(d) Who owned the cattle in controversy on June 1, 1914, at the time same were purchased by Lee Bros. from W. S. Barrow? Answer: W. E. Barrow.

"(e) Should your answer to the foregoing question be that W. E. Barrow owned the cattle on said date, then answer whether W. S. Barrow, known as Will Barrow, had authority from the said W. E. Barrow to make said sale to Lee Bros? Should you find in answer to question (d) that W. S. Barrow owned the cattle on said date, it will not be necessary for you to answer this question. Answer: Yes.

"(f) Answer whether or not W. S. Barrow on the 14th day of June, 1914, authorized or directed George F. Loving and W. W. Barron, as the purchasers of said cattle from Lee Bros., to ship same to Ft. Worth. Answer: Yes.

"(g) Did De Forrest, the representative of Clay, Robinson & Co., on the 13th or 14th day of June, 1914, at Aspermont, Tex., agree with George F. Loving, W. W. Barron, or Lee Bros. that Clay, Robinson & Co. would release its mortgage on said cattle after their shipment to Ft. Worth upon the payment to said Clay, Robinson & Co. or receipt by it at Ft. Worth, Tex., of the amount of the Lee purchase price of the cattle, or $40, with 10 per cent. cut at $37.50? Answer: Yes.

"(h) If in answer to question (g) you state that De Forrest did make such an agreement, then state giving the names with whom he made such agreement. Answer: Lee Bros.

"(i) If in answer to question (g) you state that De Forrest made such an agreement, then state whether he was acting within his authority as the agent of Clay, Robinson & Co. Answer: Yes; in a general way.

"(j) Answer whether or not on the 15th day of June, 1914, the day the cattle in question arrived in Ft. Worth, Geo. F. Loving or Roy Riddle stated to Ireland Hampton that De Forrest at Aspermont had agreed that Clay, Robinson & Co., after the shipment of the cattle in question to Ft. Worth, would release its mortgage upon the payment to it of the price that Lee Bros. had agreed to pay for said cattle. Answer: Yes.

"(k) If in answer to the last question you state that Geo. F. Loving or Roy Riddle did tell Ireland Hampton of such an agreement, then state whether or not Ireland Hampton approved or ratified the same. Answer: Yes."

The controversy arises as to the effect of these findings, and especially as affected by (a).

The Court of Civil Appeals treated this finding as being that the only consideration for the De Forrest agreement was the $150 paid by Lee Bros. to Barrow as earnest money to bind their purchase, and which was advanced as a part payment on the cattle purchased by them from W. E. Barrow.

That court construed this finding as excluding any other consideration for the contract between Clay, Robinson & Co. and plaintiffs in error. They held with the trial court that, as this was paid some time prior to the agreement to release, and did not come into the hands of Clay, Robinson & Co., it did not constitute a sufficient consideration for the contract to accept what Lee Bros. were to pay to Barrow for the cattle and release the mortgage.

Some days intervened between the date of the contract of purchase by Lee Bros. from Barrow and the delivery of the cattle. In the meantime Lee Bros. had sold them to Loving and Barron. About the time of delivery these plaintiffs in error discovered the existence of the mortgage on the cattle.

We take it that a proper interpretation of the transaction is that Clay, Robinson & Co. and Barrow, after the discovery of the mortgage lien by purchasers, became, under the De Forrest agreement, the real vendors of the cattle. The mortgagee could have insisted upon its lien to the full value of the cattle; could have sequestered them; could have insisted upon the application of their full market value on its debt; or could have required that they be turned back to the possession of the mortgagor, impressed with the lien of the mortgage. It did not see proper to take any one of these courses, but was satisfied to forego and yield up these rights.

In and a part of the terms of the De Forrest agreement was the forbearance by the company to demand at all events the $150 which had been paid to Barrow. It took the burden of this loss from its security in the event Barrow did not pay it over.

Again, when the mortgage lien was discovered, the plaintiffs in error had the right to refuse to carry out the contracts of purchase in the event the company should demand the full rights vested under the mortgage, and to demand the return of the earnest money paid. The agreement to release the mortgage removed the necessity, and.

perhaps the right, to exercise this privilege. The agreement to release was a consideration moving to them to thus refrain and to confirm the purchase made. It resulted in the loss to Lee Bros. of any right to demand a return of the $150 which they had paid to Barrow.

Under the views above expressed, the $150 did in fact constitute at least a part of the consideration for the agreement to release.

We are of the further opinion that, when the findings of the jury are considered as a whole, they harmonize, and that, upon the facts found, as a matter of law, consideration in support of the contract of release is shown.

Having in mind the foregoing construction of the findings of the jury, and in view of the pleadings, the uncontradicted evidence, and the findings of the court on the other issues arising in the trial of the case, we are of opinion that the judgments of the Court of Civil Appeals and of the trial court should be reversed, and that the judgment of the trial court should be reformed and rendered as follows: In favor of Clay, Robinson & Co. of Texas against W. E. Barrow for $3,422.55, with 8 per cent. interest thereon from July 3, 1915, together with all costs incurred in the trial court, and a foreclosure of the chattel mortgage lien on 274 head of the 716 head of cattle described therein, and being the unsold part thereof; that judgment should be rendered against Clay, Robinson & Co. of Texas in favor of Lee Bros., a partnership composed of W. H. Lee and John Lee, for $239.50, with 6 per cent. interest per annum from June 15, 1914, and costs, and in favor of George F. Loving and W. W. Barron for $1,266.85, with interest at 6 per cent. per annum from June 15, 1914, and costs; that the receiver should be ordered to pay over to Lee Bros. and Loving and Barron the funds in his hands from the sale of the 276 head of cattle, in the proportion of their recovery against the plaintiff, and for any unpaid balance each should have an execution against plaintiff; that the Cassidy Southwestern Commission Company and the National Live Stock Commission Company, together with W. S. Barrow, should go hence without day, and recover from plaintiff their costs; that all costs in this court and in the Court of Civil Appeals should be adjudged against Clay, Robinson & Co. of Texas; that the trial court should make such other orders as are necessary to close the receivership.

PHILLIPS, C. J. The judgments of the District Court and Court of Civil Appeals will be reversed and the cause remanded to the District Court with direction to enter judgment in accordance with the recommendation in the above opinion.